UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TRACY EDWARDS,

                                    Plaintiff

-vs-

JO ANNE B. BARNHART,
Commissioner of Social Security,

                                    Defendant.
_____

DECISION AND ORDER

02-CV-6650 CJS

APPEARANCES

For the Plaintiff:          Tracy Edwards, *pro se*
                            312 Wilkins Street
                            Rochester, New York 14621

For the Defendant:          Michael A. Battle, Esq.
                            United States Attorney for the
                            Western District of New York
                            Brian M. McCarthy, Esq.
                            Assistant United States Attorney
                            100 State Street
                            Rochester, New York 14614

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner"), which denied

plaintiff's application for Supplemental Security Income ("SSI") disability benefits.  Now

before the Court is defendant's motion for judgment on the pleadings [#9].  For the

reasons stated below, the application is denied, the Commissioner's decision is

reversed, and this matter is remanded for further proceedings.

1

FACTUAL BACKGROUND

Plaintiff was born on November 6, 1966.  Plaintiff completed high school and some college-level courses.  She has an extremely limited work history, having been employed for short stints as a cashier and as a "paraprofessional temp."  Plaintiff last worked in 1997.  Plaintiff claims to be unable to work, due to pain in her back, her right shoulder and arm, and her right leg.

MEDICAL EVIDENCE

Plaintiff's primary care physician is Regina Rodrigues-Garvin, M.D. ("Garvin"). Garvin prescribed plaintiff Vioxx, Flexeril, and Tylenol #3 for low back pain.  Garvin's office note dated November 20, 2000, reports that plaintiff was complaining of low back pain, "to the point where she is not able to stand up to do her dishes." (117)[1].

Plaintiff was seen in the Genesee Hospital emergency room on January 5, 2001, complaining of right-sided lower back pain, radiating into her right buttock and right leg. Plaintiff apparently informed ER staff that an MRI performed on December 27, 2000, indicated a herniated lumbar disc.  The ER physician recommended that plaintiff continue taking Flexeril and Tylenol #3.

Orthopedic specialist Peter N. Capicotto, M.D. ("Capicotto") examined plaintiff on January 10, 2001.  Capicotto noted that plaintiff was complaining of right-sided low back pain and some right leg pain.  Capicotto stated that plaintiff had undergone an MRI that show no evidence of herniations or spinal stenosis.  Capicotto further stated that, "My impression is low back pain, right leg pain.  Etiology: This certainly does seem

---

[1]Citations are to the administrative record, unless otherwise noted.

to be more of an L4 radiculopathy, although she lacks any involvement of the L4 root on her initial MRI, done 11/25/00." Capicotto requested that an electromyogram ("EMG") be performed.

On or about February 14, 2001, Garvin noted that plaintiff's pain medications were causing her to be too sleepy. For example, Garvin noted that plaintiff had overslept and had missed the EMG test ordered by Capicotto, which had to be rescheduled for March 2001. Garvin recommended that plaintiff try cutting in half her dosages of Flexeril and Tylenol #3. The Court notes, however, that at the hearing in this matter on July 1, 2002, plaintiff testified that her pain medications were still causing her to be excessively drowsy. (176, 184).

Neurologist Joseph I. Mann, M.D. ("Mann") examined plaintiff on April 9, 2001. Mann's neurological exam "did not show any major abnormalities." Mann performed diagnostic tests which showed no "definite evidence of acute or chronic denervation." (143). Mann and neuro-radiologist Dr. Uresh Patel reviewed plaintiff's MRI and found it to be normal. As a result, Mann found no reason to perform another MRI scan.

Capicotto noted on April 18, 2001, that plaintiff's MRI and EMG tests were both normal. Capicotto concluded that plaintiff was suffering from low back and leg pain that was "idiopathic," that is, having an unknown cause. Capicotto recommended that plaintiff follow-up with a pain clinic, since surgical intervention was not warranted.

Samuel Balderman, M.D. ("Balderman"), a consultative examining physician, examined plaintiff on May 2, 2001. Balderman noted only mild limitations in plaintiff's lumbar spine flexion, with "no spasm, no point pain." (129). Balderman found that plaintiff had a full range of motion in her hips, knees, and ankles, and full strength

3

bilaterally in the legs.  Balderman stated, however, that plaintiff had mild limitations in bending and in reaching with her right arm.  An x-ray of plaintiff's spine taken on May 2, 2001, was normal.

On May 11, 2002, Garvin wrote plaintiff a note stating that plaintiff could not sit for more than twenty minutes at a time, and that she was going to be evaluated by "orthopedics" on May 29, 2002. (147).  Plaintiff was apparently then seen by Capicotto on June 19, 2002, at which time x-rays were taken of plaintiff's lumbo-sacral spine, hips, and pelvis. (164).  Plaintiff was scheduled for a follow-up visit with Capicotto on July 3, 2002.  However, the record contains no additional information regarding the x-rays or plaintiff's visits with Garvin or Capicotto in 2002.

At the hearing before the ALJ on July 1, 2002, plaintiff told the ALJ that she had recently had an MRI, and that she was going to see a doctor for the results on July 3, 2002, two days after the hearing. (175).  The ALJ did not ask plaintiff any further questions on this point, nor does it appear that he made any attempts to obtain further information from either Garvin or Capicotto regarding plaintiff's recent medical appointments.

PROCEDURAL BACKGROUND

Plaintiff filed a claim for SSI disability benefits on December 20, 2000, claiming to be unable to work due to pain in her back, right shoulder and arm, and right leg.  The Social Security Administration denied the application initially and on reconsideration. Plaintiff requested a hearing, and a hearing was held before Administrative Law Judge ("ALJ") John Costello on July 1, 2002.  Plaintiff waived the right to be represented at the hearing, and proceeded *pro se*.  The ALJ denied plaintiff's claim in a written decision

4

dated August 29, 2002.  Plaintiff requested a review of the ALJ's decision, and the

Appeals Council denied that request on November 19, 2002.  Accordingly, the ALJ's

decision is the defendant Commissioner's final decision.

Plaintiff commenced this action on December 11, 2002.  Attached to plaintiff's

complaint is a document that is not part of the administrative record, specifically a

residual functional capacity ("RFC") assessment by Dr. Garvin, dated April 30, 2002.

The RFC assessment states that plaintiff's ability to lift and carry, and walk and stand,

are affected by her low-back pain.  Specifically, Garvin states that plaintiff can stand

and/or walk for a total of between 2 and 6 hours in an eight-hour workday, at intervals of

less than one hour without interruption.  Dr. Garvin noted, however, that plaintiff's ability

to sit was not affected.  Dr. Garvin further stated that plaintiff should never climb,

balance, stoop, crouch, kneel, or crawl, and that her ability to reach, push, and pull

were also affected.  Garvin also listed the following environmental restrictions: heights,

moving, machinery, temperature extremes, and vibration.  Notably, although Garvin

stated in this RFC assessment that plaintiff had *no limitation* on her ability to sit, the

note that Garvin wrote only eleven days later on May 11, 2002, discussed above,

states: "Pt [patient] cannot sit more than 20 minutes at a time."

Defendant filed the subject motion for judgment on the pleadings, claiming that

the defendant's final determination is supported by substantial evidence and should be

affirmed.  The Court issued a Motion Scheduling Order, containing the following

language:

> Plaintiff, Ms. Tracy Edwards, is required to attend [oral argument], and to
> be prepared to explain to the Court why the decision of the Social Security
> Administration Administrative Law Judge should be reversed.  In other

words, plaintiff should be prepared to explain why the evidence that she submitted to the Administrative Law Judge proves that she is disabled and unable to work.

In response, plaintiff submitted a three-page handwritten letter, in which she states that she is in constant pain, but which does not allege any particular deficiency in the ALJ's decision.

## STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

The SSA has promulgated administrative regulations for determining when a claimant meets this definition. First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities. If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses

the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (Citations omitted).  At step five of the five-step analysis above, the defendant may carry its burden by resorting to the Medical Vocational Guidelines or "grids" found at 20 C.F.R. Pt. 404, Subpart P, Appendix 2. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996)(citation omitted); *see also*, SSR 83-10 (Noting that in the grids, "the only impairment-caused limitations considered in each rule are exertional limitations.")  However, if a claimant has nonexertional impairments which "significantly limit the range of work permitted by his exertional limitations," then defendant cannot rely upon the grids, and instead "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain or perform."[2] *Pratts v. Chater*, 94 F.3d at 39; *see also*, 20 C.F.R. § 416.969a(d).[3]

Under the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable

---

[2]"Exertional limitations" are those which affect an applicant's ability to meet the strength demands of jobs, such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  "Non-exertional limitations" are those which affect an applicant's ability to meet job demands other than strength demands, such as anxiety, depression, inability to concentrate, inability to understand, inability to remember, inability to tolerate dust or fumes, as well as manipulative or postural limitations, such as the inability to reach, handle, stoop, climb, crawl, or crouch. 20 C.F.R. 416.969a.

[3]20 C.F.R. § 416.927(d) provides, in relevant part, that, "[w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength [exertional] and demands of jobs other than the strength demands [nonexertional], we consider that you have a combination of exertional and nonexertional limitations or restrictions. . . . [W]e will not directly apply the rules in appendix 2 [the grids] unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rule provides a framework to guide our decision."

>clinical and laboratory diagnostic techniques and is not inconsistent with
>the other substantial evidence in your case record, we will give it
>controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2).  However, "[w]hen other

substantial evidence in the record conflicts with the treating physician's opinion . . .  that

opinion will not be deemed controlling.   And the less consistent that opinion is with the

record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d

Cir. 1999)(*citing* 20 C.F.R. § 404.1527(d)(4)).

Consequently, where a treating physician's opinions are inconsistent with other

substantial evidence in the record, his opinion is not entitled to controlling weight. *Snell*

*v. Apfel*, 177 F.3d at 133.  In such a case, the ALJ not only must decide what, if any,

lesser weight to assign to the treating physician's opinion, but must also explain that

decision. *Id*. ("Failure to provide 'good reasons' for not crediting the opinion of a

claimant's treating physician is a ground for remand.")(citation omitted).   The

Commissioner's regulations state that, "[u]nless we give a treating source's opinion

controlling weight . . . we consider all of the following factors in deciding the weight we

give to any medical opinion. (1) Examining relationship.... (2) Treatment relationship....

(3) Supportability .... (4) Consistency .... (5) Specialization .... (6) Other factors." 20

C.F.R. § 416.927(d)(2); *see also*, 20 C.F.R. § 404.1527(d); *Schaal v. Apfel*, 134 F.3d at

504 (Finding that the ALJ did not properly apply the treating physician rule, in part,

because he "failed to consider all of the factors cited in the regulations.").  If the ALJ

fails to properly weigh evidence, the court cannot do so; instead, the matter must be

remanded. *See, Schaal v. Apfel*, 134 F.3d at 504 ("It is for the SSA, and not this court,

to weigh the conflicting evidence in the record.")(citation omitted); *accord, Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  Moreover, the ALJ should not reject a treating physician's opinion as being unsupported, without first attempting to develop the record. *See, Schaal v. Apfel*, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the physician] *sua sponte*."); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel."); *Rosa v. Apfel*, 1998 WL 437172 at *4 (S.D.N.Y. Jul. 31, 1998)("A simple follow-up request from the ALJ could have resulted in an assessment of the claimant's residual functional capacity from his treating physician.").

In an action in federal court to review a disability ruling by the Commissioner of Social Security, the Court has a heightened duty to review the record in certain circumstances:

> In deciding whether the Secretary's conclusions are supported by substantial evidence, we must first be satisfied that the claimant has had a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.  The Act must be liberally applied, for it is a remedial statute intended to include not exclude.  Thus, when the claimant appears pro se, suffers ill health and is unable to speak English well, as in this case, we have a duty to make a 'searching investigation' of the record to make certain that the claimant's rights have been adequately protected.

*Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (citations and internal quotation marks omitted).

THE ALJ'S DECISION

Applying the five-step sequential analysis discussed above, the ALJ in this case found, first, that plaintiff had not engaged in substantial gainful activity during the relevant period.  Second, he found that she had an impairment that was severe within the meaning of the regulations, namely, "pain, involving her back, right shoulder, right arm, and right leg." Third, the ALJ found that this "severe impairment" did not meet or equal the criteria of any impairment(s) listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P ("the Listings")(20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  Fourth, the ALJ found that plaintiff had the following residual functional capacity: "[S]he can at least lift and carry up to ten pounds.  In addition, the claimant can at least sit for up to six hours and stand or walk for up to two hours during the course of an eight hour workday."  However, because the ALJ found that plaintiff had no past relevant work, he proceeded to step five of the five-step analysis.  At step five, the ALJ applied the Medical-Vocational Guidelines, or "grids," and found that plaintiff was capable of performing the full range of sedentary work.  In this regard, the ALJ noted that plaintiff was 35 years old, with a high school education, no transferable skills, and no non-exertional limitations.  The ALJ thus concluded, at the fifth step of the five-step analysis, that plaintiff was not entitled to SSI benefits.  In reaching this conclusion, the ALJ found that plaintiff's complaints of pain and limitations were not credible. (15).  Notably, although the ALJ stated that he found plaintiff not credible "on the basis of the record as a whole," the only specific reasons he gave for rejecting the plaintiff's testimony was the lack of objective medical evidence to support her complaints of pain. (15).

10

ANALYSIS

Applying the foregoing principles of law, the Court finds that the Commissioner's

decision must be reversed, and a new hearing held.  As discussed above, the ALJ

found that plaintiff had the ability to perform sedentary work.  Sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting
> or carrying articles like docket files, ledgers, and small tools. Although a
> sedentary job is defined as one which involves sitting, a certain amount of
> walking and standing is often necessary in carrying out job duties. Jobs
> are sedentary if walking and standing are required occasionally and other
> sedentary criteria are met.

20 CFR § 404.1567(a); *see also*, SSR 83-10, 1983 WL 31251 at *5 ("Since being on

one's feet is required "occasionally" at the sedentary level of exertion, periods of

standing or walking should generally total no more than about 2 hours of an 8-hour

workday, and sitting should generally total approximately 6 hours of an 8-hour

workday.").  However, in his decision, the ALJ said nothing about Garvin's opinion that

plaintiff could not sit for more than twenty minutes at a time.  Therefore it is unclear

whether or not the ALJ was even aware of Garvin's statement.  On the other hand, if

the ALJ was aware of the statement and chose to disregard it, he was required to

explain his reason for doing so.

The Court also finds that the ALJ should have developed the record further,

regarding Garvin's statement, by asking her to explain the basis for her opinion.  In this

regard, the ALJ would presumably ask Garvin to explain the glaring discrepancy

between her April 30, 2002, RFC assessment, in which she stated that plaintiff had no

limitations on her ability to sit, and her May 11, 2002 note, in which she stated that

plaintiff could only sit for twenty minutes at a time.  The ALJ might also inquire of Garvin

whether or not it is possible that plaintiff could be placed on pain medications that do not cause excessive daytime drowsiness.

The Court also finds that it is unclear whether or not the ALJ complied with  20 CFR § 416.929, when he found plaintiff's complaints of pain to be not credible.  The regulation states that,

> we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work (or if you are a child, to function independently, appropriately, and effectively in an age-appropriate manner) solely because the available objective medical evidence does not substantiate your statements.

20 C.F.R. § 416.929.  Instead, the ALJ is required to consider factors such as the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant is taking to alleviate pain or other symptoms, treatment, other than medication, that the claimant receives to relieve pain or other symptoms; any measures the claimant uses or has used to relieve pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id*.  As discussed above, here it is unclear whether or not the ALJ complied with this requirement, since his credibility assessment focused exclusively on the lack of objective medical evidence to support plaintiff's complaints of pain.  The ALJ did not, for example, discuss plaintiff's use of prescribed medications, or her use of a TENS[4] unit to relieve her pain.  Also with

---

[4]A transcutaneous electrical nerve stimulation ("TENS") unit emits mild electrical signals designed to control pain.

12

regard to plaintiff's medications, the ALJ did not discuss the effect of plaintiff's

medications, i.e. excessive drowsiness, on her ability to work.

CONCLUSION

For all of the foregoing reasons, defendant's motion for judgment on the

pleadings [#9] is denied, the Commissioner's decision is reversed, and this matter is

remanded for a new hearing pursuant to the fourth sentence of 42 U.S.C. §  405(g).

The Clerk of the Court is directed to close this case.

So Ordered.

Dated: Rochester, New York
       May 31, 2005                    ENTER:


                                       /s/ Charles J. Siragusa
                                       CHARLES J. SIRAGUSA
                                       United States District Judge